TIARA OIL COMPANY

v.

SUN OIL COMPANY, BP North America, Inc., Allied New York Services, Inc., and Texaco, Inc.

No. 76–107.

United States District Court,
E. D. Pennsylvania.

May 25, 1978.

Barton A. Haines, Philadelphia, Pa., for plaintiff.

Jon A. Baughman, Patricia H. Burrall, Philadelphia, Pa., for defendant Sun Oil.

Robert M. Landis, Richard R. Rulon, Philadelphia, Pa., and William E. Willis, Michael Winger, New York City, for defendant BP North America.

Raymond T. Cullen, Jr., Philadelphia, Pa., for defendant Allied New York Services.

Jane D. Elliott, Philadelphia, Pa., and Philip W. Schaefer, New York City, for defendant Texaco.

## MEMORANDUM OPINION

LUONGO, District Judge.

Colonel Kenneth A. Gaskin, sole proprietor of Tiara Oil Company, filed this complaint pro se on January 14, 1976, alleging that the defendants had violated both federal antitrust law and Pennsylvania tort law. Colonel Gaskin later retained counsel, and, after protracted discovery, this case was tried without a jury on April 24–28, 1976. At the close of plaintiff's case, all four defendants moved to dismiss the action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. I granted the Rule 41(b) motions with respect to all claims save for plaintiff's tort claim against Sun Oil Company. Sun then presented its defense and counterclaims against plaintiff. At the conclusion of the trial, on findings of fact and conclusions of law stated in open court, I found in favor of Sun on plaintiff's remaining tort claim and on count I of Sun's counterclaim; I found in favor of plaintiff on count II of Sun's counterclaim. Both parties were given time to request additional findings of fact or conclusions of law.

Four days later, on May 1, 1978, Colonel Gaskin, having discharged his trial counsel, moved pro se for a continuance until May 31, to permit him to obtain new counsel and to submit requests for additional findings and conclusions. Inasmuch as he offered no reasons that could justify a one-month delay, I denied the motion by order. Colonel Gaskin then filed "Preliminary Recommended Findings of Fact and Conclusions of Law" on May 4, and a "Motion to Reverse Judgment or in the Alternative Order New Trial" on May 8. Those two submissions are the subject of this memorandum opinion.

Very briefly, this case arose out of an exchange agreement between Colonel Gaskin, trading as Tiara Oil Company, and defendant Sun Oil Company. Under the terms of this agreement, Colonel Gaskin obtained from Sun 30,000 barrels of heating oil, in return for which he agreed to deliver to Sun or its designee, at Kennedy International Airport in New York, 30,000 barrels of jet fuel. Sun later advised Colonel Gaskin by telephone that its designee at Kennedy Airport was "BP," and Colonel Gaskin then arranged to purchase jet fuel (which was already stored at the airport) and transfer it to "BP," Sun's designee. Initially, Colonel Gaskin purchased 20,000 barrels of fuel from a foreign refiner, and then arranged with defendant Allied New York Services, which operates the fuel storage facilities at Kennedy Airport, to effect a paper transfer of the fuel from the account of the foreign refiner to the account of "BP." Because the fuel was of foreign origin, i. e., "bonded," Allied transferred it to the account of BP North America, which

dealt in bonded fuel, although Sun had intended that the fuel go to BP Ohio, which dealt only in domestic fuel. When the misunderstanding became apparent to all concerned, Colonel Gaskin deferred any effort to secure the 10,000 barrels needed to complete the exchange, and set out to "domesticate" the 20,000 barrels stored at Kennedy Airport so that BP Ohio, Sun's designee, would be able to use that fuel. Sun waited for nearly two years while Colonel Gaskin unsuccessfully sought an oil import allocation that would have enabled him to "domesticate" the fuel. Ultimately, Sun demanded that Colonel Gaskin pay for the 30,000 barrels of heating oil that he had received. Apart from a conditional check that was not accepted by Sun, Colonel Gaskin made no payment to Sun. Finally, Sun arranged with Allied, BP North America, and Texaco to transfer the fuel to Texaco's account, and Sun agreed to indemnify BP North America in connection with this transfer. The fuel was in fact transferred to the account of Texaco.

Thereafter, Colonel Gaskin brought this action, alleging that the defendants had (1) violated the antitrust laws, (2) converted the 20,000 barrels of fuel, which belonged to Tiara, and (3) interfered with Tiara's business relationships with its customers. Only the antitrust and conversion claims were pressed at trial, and I dismissed the antitrust claims against all the defendants at the close of plaintiff's case. Fed.R.Civ.P. 41(b). Sun then presented its defense on plaintiff's conversion claim, as well as its counterclaim for breach of contract. As I noted earlier, I found in favor of Sun both on the conversion claim and on count I of Sun's counterclaim. Colonel Gaskin then filed these motions.

### Requested Findings of Fact and Conclusions of Law

Colonel Gaskin's "Preliminary Recommended Findings of Fact and Conclusions of Law," with one exception, do not propose *additional* findings; rather, they seek to reargue the issue of Sun's acceptance or rejection of the 20,000 barrels of fuel at Kennedy Airport. In making oral findings of fact at the close of the trial, I clearly stated that Sun accepted that fuel on the condition that Colonel Gaskin would attempt to have it "domesticated." I also found that Sun, when it ultimately had the fuel transferred to the account of Texaco, waived this condition and accepted the fuel in its bonded state. Finally, I found that Sun at no time rejected the fuel. In his submission, Colonel Gaskin quotes extensively from these findings of fact and argues that they are erroneous. Treating the submission as a Rule 52(b) motion to amend findings of fact, I conclude that it is without merit.

In one respect, however, Colonel Gaskin apparently seeks an additional finding of fact. Colonel Gaskin originally contended that the defendants' actions indirectly prevented Tiara from obtaining an oil import allocation that would have enabled it to conduct a thriving business, and his original demand for damages was premised on this theory. I found at the close of the trial, however, that he had not established that Tiara would have obtained the allocation it sought under any circumstances. As I interpret his present submission, Colonel Gaskin seeks a finding that Tiara could have sold the 20,000 barrels of bonded fuel to Lufthansa Airlines, *without* obtaining an allocation, had the defendants not transferred that fuel to Texaco. The requested finding, which might serve as a basis for computing damages in the event that plaintiff had prevailed on his conversion claim, is largely beside the point, given plaintiff's failure to demonstrate that any conversion occurred. In any event, the record establishes only that Lufthansa Airlines would have been a *potential* customer for the 20,000 barrels of bonded jet fuel in 1973, when the alleged conversion occurred.

### "Motion to Reverse Judgment or in the Alternative Order New Trial"

With respect to Colonel Gaskin's "Motion to Reverse Judgment or in the Alternative Order New Trial," the relief requested must be denied. To begin with,

this motion should have been made within ten days of the entry of judgment, whether it is treated as a Rule 59(e) motion to amend the judgment or as a Rule 52(b) motion to amend findings of fact (as well as the judgment). However, Colonel Gaskin did not serve notice of this motion until May 8, twelve days after the entry of judgment on April 26, and it was therefore untimely.

Apart from the untimeliness of this motion, however, I conclude that it simply is without merit. Colonel Gaskin, in this motion, seeks to reargue the issues raised by the Rule 41(b) motions for dismissal that were granted at the close of plaintiff's case. A brief synopsis of those motions will suffice for present purposes.

■ First, defendant Allied New York Services moved to dismiss on the ground that personal jurisdiction over it was lacking. I granted that motion, stating that plaintiff had offered no evidence that would support personal jurisdiction over Allied, a New York corporation, in the Eastern District of Pennsylvania. N.T. 503–04. Nothing in Colonel Gaskin's present motion adds to the record I had before me at that time, and I still see no basis for personal jurisdiction over Allied in this district.

■ The three remaining defendants—Sun, BP North America, and Texaco—also moved under Rule 41(b) to dismiss Colonel Gaskin's claims under the Sherman Act, 15 U.S.C. §§ 1, 2 (1976). I granted those motions without making specific findings of fact, based on the statement of plaintiff's counsel that Colonel Gaskin "concede[d]" the antitrust claims. N.T. 510–11. Had plaintiff pressed the antitrust claims and opposed these motions, I would nevertheless have reached the same conclusion, based on his failure to produce any evidence in support of any claim under either section 1 or · section 2 of the Sherman Act.

Finally, BP North America and Texaco moved to dismiss plaintiff's pendent state law claim based on the tort of conversion. I granted these motions, after stating my findings of fact and conclusions of law.

N.T. 523–24. Nothing in Colonel Gaskin's present submission persuades me that either BP North America or Texaco can properly be held liable on a conversion theory, and I therefore reaffirm my earlier decision on this issue. In short, addressing the merits of Colonel Gaskin's untimely motion, I conclude that it must be denied.

For the reasons stated previously, treating Colonel Gaskin's proposed findings and conclusions as a Rule 52(b) motion to amend findings, I will deny the motion. With respect to the "Motion to Reverse Judgment or in the Alternative Order New Trial," the motion is both untimely and without merit, and I will therefore deny it.